UNDERWRITERS AT LLOYD'S, LONDON and Certain Insurance Companies

v.

TRANSCONTINENTAL GAS PIPELINE CORPORATION.

No. CV 90–2368.

United States District Court, W.D. Louisiana, Lake Charles Division.

Jan. 11, 1994.

---

19. 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).

20. 757 F.2d 634 (5th Cir.1985).

Edward S. Johnson, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, for Lloyds of London.

Gary A. Bezet, Jay M. Jalenak, Jr., Barrye K. Panepinto, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Transcontinental Gas Pipe-Line Corp.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court are cross motions for summary judgment. Both parties seek a declaratory judgment to determine whether or not the Louisiana Oilfield Anti-Indemnity Act (LOAIA) applies to the contract of indemnity between Harrington Enterprises, Inc. (Harrington) and Transcontinental Gas Pipe Line Corporation (Transco). Harrington was insured by Underwriters at Lloyd's, London and Certain Insurance Companies. Pursuant to 28 U.S.C. § 636(b)(1)(B) a report and recommendation was prepared and filed by Magistrate Judge Wilson.

■ For the reasons stated in the Report and Recommendation of Magistrate Judge Wilson and for the additional reasons stated below, this court finds that LOAIA does apply to the contract between Harrington and Transco. Therefore, summary judgment will be granted in favor of Underwriters at Lloyd's, London and Certain Insurance Companies.

This court adopts the facts as they are stated in the Report and Recommendation; therefore, they will not be restated herein. The court will now address the objections raised by Transco to the Magistrate's Report and Recommendation.

■ First, Transco objects to the Magistrate's focus on platform 133 "A" in determining whether or not the contract between Harrington and Transco pertains to "a well." Transco argues that the "Magistrate Judge's decision amounts to a finding that the Transco/Harrington contract pertained only to the 133 "A" platform." *See* Transco's Objections to the Recommendations of the Magistrate, p. 3. Transco implies that the Magistrate Judge should not have focused on one platform because "the record is clear that the contract pertains to *numerous* platforms and facilities in two states. If the contract pertains to the 133 "A" well(s) ... then it must of necessity also apply to numerous other wells throughout Texas and Louisiana." *Id.* at p. 3. The fact that Magistrate Wilson focused on platform 133 "A" is not a fallacy of logic as suggested by Transco. According to the test set forth in *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir.1992), all that is required by the first part of the test (which is the only part at issue here) is that the contract "pertain to a well." Magistrate Wil-

son concluded that the Harrington/Transco contract pertained to the 133 "A" wells. According to *Transcontinental Gas*, these wells constituted one well for purposes of LOAIA. *Id.* at 995, n. 40. Since the first inquiry had been satisfied by looking at one platform only, there was no need to look at other platforms involved in the contract. Furthermore, the fact that the contract may pertain to numerous other wells throughout Texas and Louisiana is of no consequence in this decision.

■ Secondly, Transco argues that Magistrate Judge Wilson erred in focusing on the site of the accident to determine the subject of the contract. In its objections to the Report and Recommendation, Transco states, "The fact that Mr. Fontenot was injured next to 133 "A" does not and cannot convert this contract to a contract pertaining to the wells produced from that platform." *See* Transco's Objections to the Recommendations of the Magistrate, p. 4. The Magistrate's Report and Recommendation in no way infers that the location of Mr. Fontenot's injury converted the contract to a contract pertaining to the wells produced from the platform he was working on. The fact that Mr. Fontenot was working on platform 133 "A" is evidence that the Harrington/Transco contract pertained to 133 "A" wells, and the sole inquiry revolves around what the Harrington/Transco contract pertained to. Therefore, focusing on 133 "A" was not error on the part of Magistrate Wilson.

■ In further arguing its objection, Transco states that the location of Mr. Fontenot's injury does not and cannot change the fact that Transco and Harrington *never* contracted pertaining to "a well." *See* Transco's Objections, p. 4. Transco argues that Transco and Harrington did not contemplate a well or wells; therefore, their contract did not pertain to a well. In *Transcontinental Gas*, the court listed certain factors to be considered in determining whether or not a contract pertains to a well. *Transcontinental Gas*, 953 F.2d at 994–995. Although the parties' intent when entering a contract is always a consideration, it is not the sole consideration in this inquiry. It is not one of the ten factors listed in *Transcontinental Gas*. Therefore, the fact that Transco and Harrington may not have contemplated a well or wells is not determinative in this case.

Finally, Transco argues that Magistrate Wilson erred in his alleged use of unsupported factual assumptions. Transco quoted the Report and Recommendation as stating, "[t]o the extent that the contract between the parties provided for work that included work on Transco's meter, the contract 'pertained to a well.'" *See* Transco's Objections, p. 4. The Magistrate found that Transco's meter, located on platform 133 "A", was the last reasonably determinable point before the gas pumped from the platform 133 "A" wells could no longer be identified with a particular well. This, according to *Transcontinental Gas*, should be the focus of the inquiry when determining whether or not a contract pertains to a well. *Transcontinental Gas*, 953 F.2d. at 994. In its objections, Transco then argues that there is no evidence indicating that the work to be performed under the contract included the meter. In support of this argument, Transco submits the Affidavit of Winfard Treme, the District Manager of Transco. Mr. Treme states that Harrington did not work on the 133 "A" meter. However, whether Harrington did or did not perform work on the 133 "A" meter would not alone show that the contract did not envision work to be performed on the meter. As stated by Transco, "[t]he contract provided that Harrington furnish labor and equipment for sandblasting and painting *platform structures* and *platform piping* and also to *furnish* labor and equipment." *See* Transco's Objections, p. 5, n. 5. Since platform 133 "A" is a platform structure and it contained a meter, it does appear that the contract envisioned work to be performed on the meter.

In accordance with the above, summary judgment will be granted in favor of Underwriters at Lloyd's, London and Certain Insurance Companies.

## JUDGMENT

In accordance with the Memorandum Ruling filed of even date herewith, and for the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein, and after an independent review

of the record and a *de novo* determination of the issues, and consideration of any objections filed therein, and having determined that the findings are correct under the applicable law; it is

ORDERED that the Motion for Summary Judgment filed by Underwriters at Lloyd's, London and Certain Insurance Companies is GRANTED and that the defense and indemnity provisions and additional assured clauses in the contract between Transcontinental Gas Pipeline Corporation and Harrington Enterprises, Inc. are declared void and unenforceable.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Transcontinental Gas Pipeline Corporation is DENIED.

### REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

Currently before the court are cross motions for summary judgment. Each party seeks a declaratory judgment determining the applicability of the Louisiana Oilfield Anti–Indemnity Act ("LOIA"), La.R.S. 9:2780, to the contract of indemnity between Harrington Enterprises, Inc. ("Harrington") and Transcontinental Gas Pipe Line Corporation ("Transco"). This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

### FACTS

Harrington is a Louisiana contractor engaged in providing services in the offshore oilfields. Transco is a Texas corporation which owns and operates natural gas pipelines throughout the United States, including pipelines which service various producing platforms in the Gulf of Mexico off the Louisiana and Texas coasts.[1] On or about June 3, 1987, Transco and Harrington entered into a contract providing for certain services to be performed by Harrington on Transco's offshore pipelines and equipment.[2] Under the contract at issue, Harrington's services were to be performed between June 15, 1987 and October 31, 1987 on Transco's pipelines located in the East and West Cameron Areas of the Gulf of Mexico off the coast of Louisiana as well as Transco's pipelines located in the High Island, Brazos, North Padre Island, and Mustang Island Areas, all of which are located off the coast of Texas.

The contract between Transco and Harrington also called for Harrington "to protect, indemnify and save [Transco] harmless from and against all claims, demands, and causes of action of every kind and character arising in favor of [Harrington's] employees ..." (*see* Exhibit "A"). Transco agreed to do the same with respect to claims arising in favor of its employees. This obligation to indemnify and defend one another as to claims by their respective employees was not dependent upon fault.

Carl Fontenot, an employee of Harrington, was injured on October 12, 1987, while he was involved in sandblasting and painting a Transco riser on a structure located in Block 133 of the Brazos Area off the coast of Texas. Transco made demand on Harrington and its insurer, to defend and indemnify Transco for the injuries allegedly sustained by Fontenot. Harrington's insurer denied Transco's claim for defense and indemnity contending that the LOIA was applicable and acted to void the indemnification and additional insured provisions of the contract.

Transco contends that the LOIA is not applicable because Transco neither owns nor operates oil and gas wells and that, therefore, the contract does not "pertain to a well" as is required for application of the LOIA. Transco argues that it only purchases gas from producers and then transports that gas through its pipelines for sale to its eventual

---

1. There is no issue concerning choice of law as both parties agree that Louisiana law applies to this matter.

2. The contract between Harrington and Transco called for Harrington to furnish:

Labor and equipment for sandblasting and painting platform structures and platform piping [and] also to furnish labor and equipment to perform various operations and maintenance functions as directed by [Transco's] authorized representative.
*see* Exhibit "A".

customers. Transco also transports gas for others through its pipeline for a transportation usage fee. In connection with this operation, Transco owns pipelines in the Gulf of Mexico that transport the gas from wells offshore to Transco's main transportation lines which bring the gas to its customers in various areas of the United States.

The particular structure on which Fontenot was working is identified as the "A" platform. It was owned and operated by Cities Service Oil Co., Inc. On this platform, Transco owned and maintained three incoming pipelines as well as a meter station. Transco also owned and operated two pipelines which exited the platform and tied into the Transco Central Texas lateral pipeline. The pipelines which crossed the 133 "A" platform carried gas from fifty-six other wells located in other areas of the Gulf of Mexico.

There were seven producing wells on the 133 "A" Platform which provided gas to the

Transco pipelines being sandblasted and painted by Harrington at the time of Fontenot's accident. After the gas was produced by the platform wells, it was measured by Transco's meter, and then commingled with gas from other wells in Transco's pipeline.

### LAW AND ANALYSIS

The sole issue before the court is the applicability of the LOIA to the indemnity provision contained in the contract between Harrington and Transco.[3] In *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir.1992), the Fifth Circuit established a two-step process for determining the applicability of the LOIA. First, the contract must "pertain to a well." Second, the contract must be related to the exploration, development, production, or transportation of oil, gas, or water. *Transcontinental Gas*, 953 F.2d at 991. The

---

3. The LOIA provides in pertinent part:

§ 2780 Certain indemnification agreements invalid

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, *contained in some agreements pertaining to wells for oil, gas, or water*, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires the defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B. Any provision contained in, collateral to, or affecting an *agreement pertaining to a well for oil, gas, or water*, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C. The term "agreement," *as it pertains to a well for oil, gas, or water*, or drilling for miner-

als which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for used in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

. . . . .

G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

(emphasis added.)

present dispute between the parties is centered on the first step.

The determination of "whether a contract pertains to a well ... requires a fact intensive case-by-case analysis." *Transcontinental Gas*, 953 F.2d at 994. The focus of the inquiry is the location of the "reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer 'pertains to a well.'" *id.* The Fifth Circuit has indicated that the following factors should be considered relative to this determination:

"1) whether the structures or facilities to which the contract applies or with which it is associated are part of an infield production system;

2) what is the geographical location of the structure of facility relative to a well or wells;

3) whether the structure in question is a pipeline or is closely involved with a pipeline;

4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;

5) whether the pipeline is a main transmission or trunk line;

6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities, and the like;

7) what is the purpose or function of the facility or structure in question;

8) what if any facilities or processes intervene between the wellhead and the structure of facility in question, e.g. "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;

9) who owns and operates the relevant facility or structure in question, and who owns and operates the well or wells that produce the gas in question;

10) any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement." *id.* at 994–995.

There were seven wells on the 133 "A" platform which produced gas that was transported by the subject pipeline. For purposes of the LOIA, these wells constituted one well. *Transcontinental Gas*, 953 F.2d at 995, n. 40. The seven wells located on the 133 "A" platform were located in close proximity to Transco's pipeline. The structure in question is a clearly a pipeline. Transco also owned and operated the meter station which was directly associated with the pipeline and the wells on the 133 "A" platform. Transco's meter measured gas from the seven wells on the 133 "A" platform prior to the time that the gas was commingled with gas originating from the fifty-six upstream wells. The gas leaving the 133 "A" platform was not treated except to bring the gas up to pipeline standards. All compression stations were located downstream from the 133 "A" platform.

The function of Transco's pipelines was to transport gas from the seven wells on the 133 "A" platform and from the upstream wells to the onshore Texas area. The platform was owned and operated by Cities Service Oil Co. The pipelines and meter station were owned by Transco.

Under the circumstances presented here, "the reasonably determinable point at which the gas can no longer be identified with a particular well" is the point where the gas leaves Transco's meter and enters Transco's pipeline. To the extent that the contract between the parties provided for work that included work on Transco's meter, the contract "pertained to a well." Because the agreement pertained, in part, to a well, the LOIA is applicable. Accordingly, the indemnification and additional insured provisions of the contract are null and void.

ACCORDINGLY,

IT IS RECOMMENDED that the Motion for Summary Judgment filed by Harrington and its insurer be GRANTED.

IT IS FURTHER RECOMMENDED that the Motion for Summary Judgment filed by Transco be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.